IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WILLIAM ANTHONY HILL, | ) |
| Plaintiff | ) ) ) |
| vs. | ) Civil Action No. 05-445J ) Judge Kim R. Gibson/ ) Magistrate Judge Amy Reynolds Hay |
| GEORGE PATRICK, ED KECHISEN, MARY JO BARBER, Mr. JOHN SAWTELLE, TOM JANOKA, Ms./Dr. JEANANN McAL-LISTER, CHRIS GARMAN, Mr. WILSON, KRISTA BROWN, MEMBERS OF THE PENN-SYLVANIA PROBATION AND PAROLE, HENRY TATUM, JOHN THOMAS, RANDELL BRITTON, SHIRLEY KNAPP, Ms. DORETTA CHENCHAERICK, TIM RICE, FRANK HART-NETT, CYNTHIA POSMOGA, JOAN BAILEY, SHARON M. BURKS, Mr. MICHAEL L. GREEN, JEFFREY IMBODEN, MATTHEW T. MANGINO, BENJAMIN MARTINEZ, GERARD MASSARO, CATHERINE McVEY, MICHAEL WEBSTER, LLOYD A. WHITE, and JERRY L. EVERHART, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) Re: Doc. Nos. 58 & 61 |
| Defendants | ) |

REPORT AND RECOMMENDATION

I. RECOMMENDATION

It is recommended that Dr. Jeanann McAllister's Motion to Dismiss (Doc. # 58) be granted. Furthermore, it is recommended that the Department of Corrections ("DOC") Defendants' Motion to Dismiss (Doc. # 61) be granted in part and denied in part. It should be granted as to all claims against all DOC Defendants except it should be denied as to Plaintiff's First Amendment retaliation claim against Defendants Kechisen, Barber and Sawtelle and it should be denied as to Plaintiff's Eighth Amendment claim against Defendants Garman and Rice for their alleged failure to protect. Furthermore, all of the claims against all of the Parole Defendants should be dismissed pursuant to the screening provisions of the Prison Litigation Reform Act ("PLRA").

II. REPORT

William A. Hill, while a state prisoner, convicted of, inter alia, Indecent Assault (18 Pa.C.S.A. 3126) and Corruption of Minors (18 Pa.C.S.A. 6301), brought the instant civil rights suit alleging that the defendants violated his federal constitutional and statutory rights and that some Defendants committed state torts.

### A. Relevant Procedural and Factual History

Plaintiff, a state prisoner at the time of filing the original civil rights complaint, was granted in forma pauperis status and is proceeding pro se. Doc. 2. The original complaint was unclear but did have attached to it some materials, including letters, and grievances and grievance responses, that helped to inform the court's understanding of what Plaintiff was attempting to claim. Plaintiff subsequently filed an "amended complaint" that merely sought to amend the relief that he requested in the original complaint. Doc. 7. Thereafter, he sought leave to file yet another amended complaint. Doc. 15. The Court granted the motion to amend but specifically directed that Plaintiff file one amended complaint that is complete unto itself and contains all of the claims against all of the defendants he wished to name. Doc. 35. Shortly thereafter, the Court received notice from his prison that Plaintiff had been released on June 22, 2006, and the prison supplied a forwarding address. Doc. 38. Plaintiff then filed a change of address. Doc. 50. Thereafter, Plaintiff filed a second amended complaint, Doc. 56-1, which is the operative complaint but which remained most unclear in its claims and allegations. Presently before the court are motions to dismiss filed by Defendant McAllister, Doc. 58, and the DOC Defendants, Doc. 61.

### B. Motion to Dismiss Standard

Dismissal is proper under Rule 12(b)(6) where the court determines that the facts as alleged by the plaintiff taken as true and viewed in a light most favorable to the plaintiff, fail to state a claim as a matter of law. See, e.g., Gould Electronics, Inc. v. United States, 220 F.3d 169,

178 (3d Cir. 2000). In addition to the complaint, courts may consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case in disposing of a motion to dismiss under Rule 12(b)(6). Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1385 n.2 (3d Cir. 1994); Barber v. Grow, 929 F. Supp. 820, 822 (E.D. Pa. 1996) (in considering a Rule 12(b)(6) motion, a court must primarily consider the allegations contained in the complaint, although matters of public record, orders, items appearing in the record of the case and exhibits attached to the complaint may also be taken into account).

In addition to the motions to dismiss, the court has authority to sua sponte dismiss the complaint "at any time" pursuant to 28 U.S.C. § 1915(e) because Plaintiff was a prisoner at the time he initiated this suit, and he is proceeding in forma pauperis, and/or pursuant to 42 U.S.C. § 1997e(c)(1), to sua sponte dismiss the complaint on its own motion because the Plaintiff has brought an action with respect to prison conditions. Notwithstanding the fact that the Defendants have filed motions to dismiss, the court is not relieved of its obligation to sua sponte dismiss the complaint if the complaint fails to state a claim and if the basis for doing so appears to the court even if not raised in the motion to dismiss. See, e.g., Lopez v. Smith, 203 F.3d 1122, 1126 n.6 (9th Cir. 2000). Hence, if there is a ground for dismissal which was not relied upon by the Defendants in their motion, the court may nonetheless sua sponte rest its dismissal upon such ground pursuant to the screening provisions of the PLRA. See id.

**C.    Discussion**

In attempting to understand Plaintiff's claims, the court will consider not only the operative complaint,[1] but also the original complaint and its attachments as well as Plaintiff's response to the first motion to dismiss filed by Dr. McAllister. See, e.g., Olson v. Jenkens &

---

[1] If the court were to consider solely the second amended complaint, it would dismiss the complaint without prejudice for pleading insufficiencies which caused it to fail to state a claim. However, as we have provided the Plaintiff ample opportunity to amend his complaint, offering further attempts would appear to be futile.

Gilchrist, 461 F.Supp.2d 710, 714, n.2 (N.D.Ill. 2006)("Other facts are derived from exhibits attached to Plaintiffs' brief in opposition to E & Y's motion to dismiss which the Court may consider without converting this motion into a motion for summary judgment.").

        1.    Dr. Jeanann McAllister

Dr. Jeanann McAllister is a psychiatrist, employed by Mercy Behavioral Health, apparently a private corporation that contracted with the State to provide services to convicts who are part of the Sex Offenders Program, referred to by Plaintiff as "SOP." Dr. McAllister is alleged to have conducted an initial interview with Plaintiff upon his entrance into the SOP. Doc. 52-1 at 3. There are only two incidences in which Defendant McAllister allegedly plays any role.

One incident involves two different therapists, who appear to have been under Dr. McAllister's supervision. Plaintiff complains that in March 2003, a therapist named Ms. Shirley Knapp, who is named as a defendant herein, and who was under Dr. McAllister's supervision, told an SOP therapy group, of which Plaintiff was a member, that they should not look at "women's butts [sic] thighs or breast." Doc. 3 at ¶ 48. Plaintiff objected to this as being contrary to his religious beliefs. Id., ¶ 50 - 51.

A second incident involved a therapist, who was supervised by Dr. McAllister, who told a group therapy session attended by Plaintiff that if they suspected their children were masturbating, they should tell their children "it's ok." Doc. 3 at ¶ 55. Plaintiff objected to this as being against his religious beliefs. After the group therapy session ended, Plaintiff went to Dr. McAllister to inform her of what transpired in group. Dr. McAllister's reaction was to say "in disbleief, 'No, she didn't say that.'" Doc. 52-1 at 5.

In the operative complaint, the sole complaint against Dr. McAllister is that

> [t]he adverse actions of defendant's **different schools of thought** between defendant **Ms. Shirley Knapp and Ms./Dr. Jeann [sic] Mc Allister** forced, influenced and the indoctrination of their religious beliefs, thus discriminated

4

> against Plaintiff religious beliefs  subjects or causes to be subjected to the deprivation of plaintiff's rights.  In violation of the **A) Religious Freedom Restoration Act (R.F.R.A.)  B) First Amendment; Free Speech, Exercise and Establish Clause.  C) Title 42 U.S.C. § 1983 :Causation Claim.  D) TITLE 42 U.S.C. § 1985(3) Deprivation of equal protection, privileges and immunities under the law.  E) The 14th Amendment : Procedural due process laws.**

Doc. 56-1 at ¶ 2.

Taking up the RFRA, 42 U.S.C. §§ 2000bb-1 et seq., claim first, it must be dismissed because the RFRA statute is unconstitutional as applied to any but federal government actors. See, e.g., City of Boerne v. Flores, 521 U.S. 507 (1997); United States v. Israel, 317 F.3d 768, 770-771 (7th Cir. 2003)("In *City of Boerne v. Flores*, . . ., the Supreme Court struck down RFRA's application to the states, but left open the possibility that RFRA still applied to the federal government.").  Here, it is clear that Dr. McAllister is not a federal government actor, even if the court assumed her to be a state government actor, a status that she disputes because she claims to be a purely private actor.  Accordingly, the RFRA claim must be dismissed.

As for Plaintiff's claims under 42 U.S.C. § 1985(3), they too must fail.  Section 1985(3), provides a cause of action whenever "two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws[.]" 42 U.S.C. § 1985(3).  Plaintiff fails to state a claim under Section 1985(3) because it does not appear that he makes any allegations of conspiracy against Dr. McAllister and any allegations of conspiracy that may be made against her are wholly conclusory.  "It is not enough for a section 1985 plaintiff to plead mere conclusory allegations of a conspiracy.  Rather, the plaintiff must plead specific material facts that show the existence of a conspiracy." Copeland v. Northwestern Memorial Hospital, 964 F.Supp. 1225, 1235 (N.D.Ill. 1997).  See also Rose v. Bartle, 871 F.2d 331, 366 (3d Cir. 1989)("[t]he allegations [of conspiracy] must be sufficient to 'describe the general composition of the

5

conspiracy, some or all of its broad objectives, and the defendant's general role in that conspiracy.'"). Nor does this requirement that allegations of conspiracy be more than conclusory run afoul of the generous pleading standard under Fed.R.Civ.P. 8(a) as construed in Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163 (1993). See, e.g., Loftus v. SEPTA, 843 F.Supp. 981, 988 (E.D. Pa. 1994) ("Requiring that a complaint alleging conspiracy flesh out in some detail the nature of the scheme does not run afoul of the admonition in *Leatherman* .... Rather, in the context of a conspiracy, the 'short and plain statement' provision of Rule 8 is satisfied only if the defendant is provided with the degree of particularity that animates the fair notice requirement of the rule."). Accordingly, any Section 1985(3) claims against Dr. McAllister should be dismissed for failing to state a claim upon which relief can be granted.

As for the First and Fourteenth Amendment claims, which must be addressed as claims brought pursuant to 42 U.S.C. § 1983,[2] it is clear that Plaintiff seeks to hold Dr. McAllister solely liable for the actions of her subordinates, something that is not permitted under Section 1983. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).

The general rule in Section 1983 cases is that a "defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior." Rode v. Dellarciprete, 845 F.2d at 1207. "Respondeat superior is a doctrine of vicarious liability based upon public policy [and] the notion that the person who benefits by the acts of the servant must pay for wrongs committed by the servant; the one held liable as master need not be at fault in any way." McClelland v. Facteau, 610 F.2d 693, 695 (10th Cir. 1979). Hence, the only way a defendant can be liable under Section 1983 is based

---

[2] See, e.g., Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 925 (9th Cir. 2001)("a litigant complaining of a violation of a constitutional right does not have a direct cause of action under the United States Constitution but must utilize 42 U.S.C. § 1983.")

upon facts showing that the defendant was personally involved in depriving the civil rights of the plaintiff.

Instantly, the only allegations against Defendant McAllister are essentially that subordinates of hers gave Plaintiff conflicting information or directions, which offended Plaintiff's religious sensibilities.[3] The complaint is devoid of any facts demonstrating that Defendant McAllister personally participated in the alleged deprivation of any of Plaintiff's federal rights. Because Plaintiff has failed to allege anything to support a conclusion that Dr. McAllister was personally involved in the deprivation of Plaintiff's federal rights, as required under Section 1983, he has failed to state a claim against her upon which relief can be granted and his complaint should be dismissed against her. See, e.g., Mosley v. County of Clark, 996 F.2d 1226 (Table), 1993 WL 230272, at *2 (9th Cir. 1993) ("The district court also dismissed Mosley's § 1983 claims against defendant Beshear for failure to allege any facts that showed Beshear personally to be involved in the deprivation of Mosley's civil rights. Because Mosley has not corrected that failing on appeal, and because that failing is fatal to a § 1983 claim, . . ., we affirm.")(citations omitted), cert. denied, 510 U.S. 1181 (1994).

  2. Defendant Shirley Knapp

The only allegations against Defendant Shirley Knapp are that during a group therapy session for sex offenders, she told the participants, one of whom was Plaintiff, that the participants were "not suppose to look at women's butt thighs or breast." Doc. 3 at ¶ 47, and

---

[3] That Plaintiff seeks to hold Dr. McAllister solely liable based on respondeat superior is made clear in his response to Dr. McAllister's first motion to dismiss. See, e.g., Doc. 52-1 at ¶¶ 11-12 wherein he notes that because the therapist who allegedly made the religiously offensive remarks about children and masturbation had left the employment of Mercy Behavioral Health, Dr. McAllister should be substituted for the therapist pursuant to Fed.R.Civ.P. 25(d). Plaintiff does not understand that Fed.R.Civ.P. 25(d) does not apply insofar as Dr. McAllister is not a "public officer" within the meaning of the Rule. See, e.g., Notes to Rule 25 addressing the 1961 Amendment wherein the notes provide "[t]he general term 'public officer' is used in preference to the enumeration which appears in the present rule. It comprises Federal, State and local officers."

when Plaintiff objected, Defendant Knapp stated "if you look at her butt or breast that's wrong and you need help." Id., at ¶ 48. Plaintiff alleges that these statements by Defendant Knapp violated his First Amendment rights to freedom of religion and RFRA. As noted above the RFRA claim must be dismissed because it is unconstitutional as applied to state actors.

Similarly, the First Amendment religious freedom claim must be dismissed because "what we know as men and women . . . we must not forget as judges." Henderson v. Frank, 155 F.3d 159, 164 (3d Cir. 1998). It is self evidently clear that a therapist telling a sex offenders' group therapy session that, in effect, they ought not objectify women by focusing on their physical attributes, constitutes a legitimate penological interest in rehabilitation that is being rationally served by such methods of treatment and hence, does not constitute a constitutionally impermissible burden on Plaintiff's First Amendment free exercise of religion, a right that is curtailed for Plaintiff as a convicted prisoner. See, e.g., Turner v. Safely, 482 U.S. 78, 89 (1987)(an action taken by prison authorities that impinges on inmates' constitutional rights is "valid if it is reasonably related to legitimate penological interests."); White v. Napoleon, 897 F.2d 103, 112-13 (3d Cir. 1990)("**In addition** to punishment and **rehabilitation** of prisoners, prison authorities have a legitimate interest in maintaining safety and security within the prison.")(emphasis added); Wilson v. Tillman, 182 Fed.Appx. 126, 128 (3d Cir. 2006)("'Inmates clearly retain protections afforded by the First Amendment, . . . including its directive that no law shall prohibit the free exercise of religion.' However, certain restrictions are justified by the valid penological objectives of deterrence of crime, rehabilitation of prisoners, and institutional security.") (citations omitted).

      3.      Grievance Defendants

Plaintiff fails to state a claim against the following eight defendants whose only role was to deny Plaintiff's grievances. The eight defendants are: George Patrick, Doretta Chencharick,

Frank Hartnett, Randell Britton, John Thomas, Henry Tatum, Sharon Burks and Jerry Everhart.[4] Doc. 3 at ¶¶ 27, 29, 35 & 69-73.  Plaintiff seeks to hold all of the defendants, (hereinafter, collectively referred to as "the Grievance Defendants") liable based on their actions or inactions in the processing and addressing of his grievances or appeals. See, e.g., Doc. 3 at ¶ 107 ("Defendants Superintendent George Patrick, Deputy Superintendent Britton, Deputy Superintendent Henry Tatum, Deputy Superintendent John Thomas, Grievance Coordinator Doretta Chencharick, Program Manager Frank Hartnett and Grievance Officer employed at Camphill, defendant Burks, [for] their failure to take action with knowledge of facts obtained, in defendants Grievance responses.").  However, this basis is not sufficient for purposes of Section 1983 liability.

The failure of prison officials to respond favorably to an inmate's grievance does not violate the constitution.  "The failure of a prison official to act favorably on an inmate's grievance is not itself a constitutional violation." Rauso v. Vaughn, 2000 WL 873285, at *16 (E.D.Pa., June 26, 2000).  See also Caldwell v.. Hall, 2000 WL 343229, at *2 (E.D.Pa. March 31, 2000); Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994); Wilson v. Horn, 971 F. Supp. 943, 947 (E.D.Pa. 1997), aff'd, 142 F.3d 430 (3d Cir. 1998).  Because Plaintiff seeks to render the Grievance Defendants liable based upon their role in denying his grievances and/or grievance appeals, Plaintiff has failed to state a claim against them upon which relief can be granted.

This is true notwithstanding his conclusory allegations of conspiracy against the Grievance Defendants.  Copeland v. Northwestern Memorial Hospital, 964 F.Supp. at 1235 (N.D.Ill. 1997). See also Rose v. Bartle, 871 F.2d at 366; Loftus v. SEPTA, 843 F.Supp. at 988.

---

[4] Defendant Everhart was added by the second amended complaint.  Doc. 56-1 at p. 2.

### 4. The Parole Defendants

Next, Plaintiff names eleven defendants, all of whom are members or employees of the Parole Board. Doc. 56-1 at p. 3. These are: Defendants Catherine McVey, Michael Greene, Jeffrey Imboden, Matthew Mangino, Benjamin Martinez, Gerald Massaro,[5] Michael Webster, Lloyd White, Mr. Wilson, Tom Janoka, and Krista Brown[6] (collectively, "the Parole Defendants").[7] Plaintiff's claims against the Parole Defendants are barred by Heck v. Humphrey, 512 U.S. 477 (1994).

Although not entirely clear, it appears that Plaintiff is complaining that the Parole Defendants wrongfully denied him parole because the hearing examiners, Defendants Massaro and Wilson, who interviewed Plaintiff for his parole eligibility had animosity toward him and entered into some conspiracy. Doc. 3 at ¶¶ 14; 85-89; 93-94. Plaintiff further alleges that there was "[t]he adversity of corrupting influence on other Board members [who] conspire to obstruct the Due Course of Justice in Denying Plaintiff a chance of Parole, Equal Privileges, Protection Under the Law. The Board basing its decision on arbitrary, impermissible criteria and politics, In violation of 42 U.S.C[.] § 1983, Civil Rights § 1985 (2) (3) conspiracy and Due Process, First Amendment Free Speech and Retaliation Clause . . . thus fair treatment in Parole decisions will enhance the change of rehabilitation." Doc. 3 at § 98.

---

[5] Mr. Massaro is listed twice on the docket as a defendant.

[6] The allegations against Defendants Janoka and Brown appear at Doc. 3, ¶¶ 45-46. To the extent that Plaintiff's complaints against these two defendants are not barred by Heck as analyzed below, the allegations nevertheless fail to state a claim upon which relief can be granted because Plaintiff had no constitutional right to have them, as employees of the Parole Board, direct DOC employees to do anything. Doc. 3 at ¶¶ 45-46 (claiming that Janoka and Brown did nothing when Plaintiff complained that Defendant Kkechisen failed to adjust his SOP time).

[7] The Plaintiff redundantly named as a Defendant "Members of the Pennsylvania Probation and Parole" Board. Because he has individually named them as defendants, it is unnecessary to name them again collectively. Hence, the Defendant "Members of the Pennsylvania Probation and Parole" Board should be struck as a party defendant.

Heck holds that

> in order to recover damages for allegedly unconstitutional conviction **or imprisonment**, or for other harm caused by actions whose unlawfulness would render a conviction **or sentence** invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983.

Heck 512 U.S. at 486-87 (emphasis added)(footnote omitted). Here, it is clear that if Plaintiff were successful in his claim that the Parole Board "conspir[ed] to obstruct The Due Course of Justice in Denying Plaintiff a chance of Parole . . . . The Board basing its decision on arbitrary, impermissible criteria and politics[,]" Doc. 3 at § 98, he would be necessarily calling into question the validity of his parole denial and would be establishing that he was entitled to parole. Such challenges to his parole denial are barred by Heck. See, e.g., Crow v. Penry, 102 F.3d 1086, 1087 (10th Cir. 1996)(Heck "applies to proceedings that call into question the fact or duration of parole or probation."); Nellom v. Luber, No. Civ.A. 02-2190, 2004 WL 816922, at *7 (E.D. Pa., March 18, 2004)("claims, which are based on the Parole Board Defendants' decisions, necessarily challenge the fact or length of Plaintiff's confinement. To the extent that Plaintiff seeks injunctive relief regarding the duration of his sentence, he may pursue such claims only in a petition for writ of habeas corpus. To the extent that Plaintiff seeks monetary damages for these actions under § 1983, the Supreme Court's decision in *Heck*, 512 U.S. 477, and the cases that have followed, bar Plaintiff's claims."). Accordingly, Plaintiff's complaint should be dismissed for failure to state a claim upon which relief can be granted.

The fact that Plaintiff has been released from prison at the expiration of his sentence and, consequently, no longer is in custody and so he does not have available to him the avenue of challenging his parole denial via a federal habeas petition does not alter the recommendation.

11

The Third Circuit has held that Heck bars such suits. Gilles v. Davis, 427 F.3d 197 (3d Cir. 2005). Therefore, Plaintiff's claims against the parole defendants must be dismissed and the Parole Defendants should be dismissed as party defendants.

To the extent that Plaintiff's claims against the hearing examiners, Dr. Massaro and Mr. Wilson, do not necessarily call into question the validity of his parole denial,[8] Plaintiff still fails to state a claim upon which relief can be granted. The main contention against Mr. Wilson and Dr. Massaro is that during the parole hearing, they were rude to him, at one point saying "you can't shut up[,]" Doc. 3 at ¶ 86, and at another point, Dr. Massaro is alleged to have asked whether the victim of Plaintiff's sexual crime was Plaintiff's daughter. Id. at ¶ 87. However, such verbal mistreatment, even if it amounts to slander as Plaintiff alleges, is not sufficient to state a claim for a deprivation of constitutional/federal rights. O'Donnell v. Thomas, 826 F.2d 788, 790 (8th Cir. 1987)("alleged verbal threats and abuse by jail officials at the hospital did not rise to the level of a constitutional violation."); Pride v. Holden, 1 F.3d 1244 (Table, text available in Westlaw)(7th Cir. 1993) ("Although indefensible and unprofessional, verbal threats or abuse are not sufficient to state a constitutional violation cognizable under § 1983.").[9] More specifically, such remarks even if slanderous in fact, do not deprive Plaintiff of a constitutionally protected interest as he has no such constitutionally protected interest in his reputation. Paul v. Davis, 424 U.S. 693, 711-12 ("the interest in reputation asserted in this case is neither 'liberty' nor 'property' guaranteed against state deprivation without due process of law. . . . [Therefore,]

---

[8] It would appear that Plaintiff's claims against them do necessarily call into question the ultimate validity of the parole denial by the Board as he challenges not merely the fairness of the hearing but the neutrality of the two hearing examiners and alleges a conspiracy to deny him parole. See Doc. 56-1 at p. 2 ("Defendants [Massaro and Wilson] having the knowledge of [a § **1985** conspiracy] and does [sic] nothing, thus conspire themselves for the purpose of deprivation of equal protection, privileges and immunities under the law.")

[9] To the extent that Plaintiff seeks to bring state law slander claim, his claim fails as a matter of law because Defendant Massaro, as a member of the Parole Hearing committee is entitled to the Sovereign Immunity defense to state law claims. 42 Pa.C.S.A. § 8522.

petitioners' defamatory publications, however seriously they may have harmed respondent's reputation, did not deprive him of any 'liberty' or 'property' interests protected by the Due Process Clause."). Accordingly, Plaintiff's claims against Dr. Massaro and Mr. Wilson fail to state a claim upon which relief can be granted and must be dismissed.

      6.  <u>Defendants Tim Rice, Ms. Posmoga and Joan Bailey</u>

Next, Plaintiff complains of actions taken by two defendants, namely, Mr. Tim Rice and Ms. Cynthia Posmoga.

The court will first address allegations against Tim Rice. One allegation is that in October or November of 2004, Defendant Rice threatened to have Plaintiff arrested and placed in the restricted housing unit for allegedly refusing to work. Doc. 3 at ¶ 73. As noted above verbal threats fail to state a claim. <u>O'Donnell v. Thomas</u>, 826 F.2d at 790. The next allegation against Defendant Rice is that in July 2004, he failed to document a program that Plaintiff completed, which negatively impacted the parole decision. Doc. 3 at ¶¶ 82 -83. To the extent that this claim necessarily calls into question the parole decision, this claim is barred by <u>Heck</u> as noted above. To the extent that this claim does not necessarily implicate the validity of Plaintiff's parole denial, Plaintiff still fails to state a claim under either the Sixth Amendment or the Fourteenth Amendment's procedural due process protections. Doc. 56-1 at p. 2.

Plaintiff contends that the facts recounted in his complaint reveal a Sixth Amendment violation.[10] Doc. 56-1 at p. 2. The explicit guarantees of the Sixth Amendment are applicable

---

[10] The Sixth Amendment provides that:

In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.

U.S. Constitution VI.

only to "criminal prosecutions." United States v. Ward, 448 U.S. 242, 248 (1980)("the protections provided by the Sixth Amendment are available only in 'criminal prosecutions.'"). Hence, the Sixth Amendment is wholly inapplicable to Plaintiff's complaint concerning prison records, prison disciplinary threats, and parole determinations, and thus, his Sixth Amendment claims must be dismissed.

Neither do the allegations state a Fourteenth Amendment procedural due process claim because falsely accusing Plaintiff of either engaging in conduct he did not engage in or falsely accusing him of failing to engage in conduct that Plaintiff did engage in fails to state a claim of constitutional violation. For

> the general rule, as stated in Freeman v. Rideout, 808 F.2d 949, 951 (2d Cir. 1986) provides that:
>
>> [A] prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest. The plaintiff, as all other prison inmates, has the right not to be deprived of a protected liberty interest without due process of law.

Munson v. Burson, 210 F.3d 372 (Table), 2000 WL 377038, at *3 -*4 (6th Cir. April 17, 2000). Here, it is undisputed that Plaintiff has no liberty interest in obtaining parole. Board of Pardons v. Allen, 482 U.S. 369, 373 (1987); Greenholtz v. Inmates of Nebraska Penal and Correctional Complex, 442 U.S. 1, 7 (1979); U.S. ex rel. Schiano v. Luther, 954 F.2d 910, 916 (3d Cir. 1992). Hence, the allegedly false information did not deprive Plaintiff of a liberty interest. Nor does he have an liberty interest in not having false information placed in his prison file because such does not impose on him an atypical and significant hardship. See, e.g., Smith v. Mensinger, 293 F.3d 641, 653 (3d Cir.2002) (district court correctly dismissed due process claim where allegation of false disciplinary report resulting in seven months' disciplinary confinement was not sufficient to constitute a due process deprivation under *Sandin v. Conner*, 515 U.S. 472 (1995)).

14

In like manner, Plaintiff's only claim against Defendant Bailey appears to be that she provided a written evaluation of Plaintiff's participation in the SOP program and that evaluation contained false and deceptive information. Doc. 3 at ¶ 68. Hence, pursuant to the immediately foregoing analysis, this claim against Defendant Bailey must be dismissed for failure to state a claim upon which relief can be granted.

Plaintiff also claims these allegations against Defendant Rice demonstrate Rice violated 42 U.S.C. §§ 1985(3) and 1986. As with the other allegations of Section 1985(3) conspiracy, the conclusory allegation of conspiracy fails to state a claim. Copeland v. Northwestern Memorial Hospital, 964 F.Supp. at 1235 (N.D. Ill. 1997). See also Rose v. Bartle, 871 F.2d at 366; Loftus v. SEPTA, 843 F.Supp. at 988. As for the Section 1986 claim, it fails to state a claim because it is time barred. Plaintiff's allegations concerning Defendant Rice involved allegations that Tim Rice engaged in this alleged wrongdoing in October/November 2004, Doc. 3 at ¶ 79, and in July 2004, id., at ¶ 82, and April 2004, id., at ¶ 83. Plaintiff did not file the current suit until December 1, 2005, which is also the date he signed his IFP application, which is beyond the one year statute of limitations for Section 1986 actions. 42 U.S.C. 1986 ("But no action under the provisions of this section shall be sustained which is not commenced within one year after the cause of action has accrued."). Alternatively, the Section 1986 claim is dismissed because it is wholly dependent on the Section 1985(3) claim and because we are recommending the dismissal of the Section 1985(3), so too should the derivative Section 1986 claim be dismissed. Rogin v. Bensalem Township, 616 F.2d 680, 696 (3d Cir. 1980) ("[b]ecause transgressions of § 1986 by definition depend on a preexisting violation of § 1985, if the claimant does not set forth a cause of action under the latter, its claim under the former necessarily must fail also."); Clark v. Clabaugh, 20 F.3d 1290, 1296 (3d Cir. 1994)(same).

The court will next address Plaintiff's claims against Defendant Ms. Posmoga. Essentially, Plaintiff alleges that he applied for a program called "Read to Your Children." The

program, run by Ms. Posmoga, never replied to Plaintiff, until he contacted Ms. Posmoga who sent a memo to Plaintiff indicating that pursuant to DOC policy, 7.8.1, Plaintiff was deemed ineligible for the program. Plaintiff filed a grievance which was responded to and which he attached to his original complaint. In that grievance response, it was explained to Plaintiff that Plaintiff was ineligible for the program because of his "current offense [i.e., having been convicted of a sexual offense] and having a victim under 18[.]" Doc. 3 at ¶ 77 and Exhibit K. Plaintiff claims this is unconstitutional discrimination against him as a sex offender. Doc. 3 at ¶ 96. To the extent that in his second amended complaint he wishes to continue to pursue an equal protection claim, it is self evidently clear, as a matter of law, that a rational basis exists for precluding sex offenders, particularly those accused of sexual contact with a minor, from a program intending to encourage interaction with children. See, e.g., Shaw v. Smith, __ Fed.Appx. __, 2006 WL 3168421, at *2 (7th Cir. 2006)("The defendants' decision here to exclude sex offenders from this program survives rational-basis review. Under this lenient standard, the prison's policy must be upheld if we can reasonably conceive of any justification for it. . . . The defendants could have rationally concluded that excluding sex offenders from the program was necessary to protect vulnerable children."); Artway v. Attorney General, 81 F.3d 1235, 1267 (3d Cir. 1996)(sex offenders are not a suspect class for purposes of Fourteenth Amendment analysis). Hence, Plaintiff fails to state a claim for an equal protection claim.[11]

---

[11] To the extent that Plaintiff raises Sixth Amendment and Fourteenth Amendment procedural due process claims and Section 1985(3) claims against Ms. Posmoga, the reasoning used above with respect to the same claims against Defendant Rice applies equally to Defendant Posmoga. The Sixth Amendment is wholly inapplicable. Plaintiff has no liberty interest in attending the Read to Your Children Program. Padilla v. Beard, __ Fed.Appx. __, 2006 WL 3321104 (3d Cir. 2006)("Restriction from employment and prison programs are among the conditions of confinement that Padilla should reasonably anticipate during his incarceration" and hence denial from those programs does not deprive him of a liberty interest); Dangerfield v. Litscher, 47 Fed.Appx. 766, 767 (7th Cir. 2002)("prisoners have no liberty interest in admission to programs that can hasten their release from prison if completed successfully"). The Section 1985(3) claim is conclusory. As to the Section 1986 claim against Ms. Posmoga, it fails because it is derivative of the Section 1985(3) claim which, itself, should be dismissed as conclusory. Rogin v. Bensalem Township; Clark v. Clabaugh.

       7.       <u>Surviving Claims</u>

In light of the foregoing the court notes that the only two viable claims left in the suit are the following. Plaintiff alleges that Defendants Garman and Rice failed to enforce certain policies that lead to him being attacked by a cell mate. The court finds this to adequately state a claim under the Eighth Amendment for failure to protect. Doc. 3 at ¶ 99 - 101. However any state law claim of negligence with respect to failing to protect Plaintiff, see Doc. 3 at ¶ 99, and state law claim of assault are dismissed as to these defendants due to the defense of sovereign immunity. 42 Pa.C.S.A. § 8522.

The second claim that survives is a First Amendment retaliation claim against Defendants Ed Keshisen, Mary Jo Barber, John Sawtelle. Plaintiff alleges that Defendant Kechisen promised to adjust Plaintiff's length of time he needed to participate in the SOP to credit Plaintiff with time that he had previously participated in and completed certain phases of the SOP. However, when this did not occur, Plaintiff apparently sent a request for administrative review to the Board of Parole complaining that he could not finish the required SOP before he maxed out on his sentence. Doc. 3 at ¶ 59. Plaintiff notes that he provided a copy of this request for administrative review to Defendants Kechisen, Barber and Sawtelle. Plaintiff alleges that out of retaliation for his filing the administrative review with the Board, Defendant Kechisen refused to shorten his SOP requirements, as he had previously promised, Doc. 3 at ¶ 65, and that the three Defendants also discharged him from the SOP, knowing that this would ruin his chance for parole. <u>Id</u>., at ¶¶ 66; 92. This is sufficient to state a claim at this point in the proceedings.

III.      <u>CONCLUSION</u>

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) & (C), and Local Rule 72.1.4 B, the parties are allowed ten (10) days from the date of service to file written objections to this report. Any party opposing the objections shall have seven (7) days from the date of

service of the objections to respond thereto. Failure to timely file objections may constitute a waiver of any appellate rights.

                                                Respectfully submitted,

                                                /s/ Amy Reynolds Hay
                                                United States Magistrate Judge

Dated: 5 February, 2007

cc:     Hon. Kim R. Gibson
        United States District Judge

        William A. Hill
        1021 Taylor Way #3
        Pittsburgh, PA 15221

        William A. Hill
        7141 Harrison Street
        Pittsburgh, PA 15218

        Mariah Passarelli
        Office of the Attorney General
        564 Forbes Avenue
        6th Floor, Manor Complex
        Pittsburgh, PA 15219
        Email: mpassarelli@attorneygeneral.gov

        A. Patricia Diulus-Myers
        Jackson Lewis LLP
        One PPG Place
        28th Floor
        Pittsburgh, PA 15222
        Email: diulusmp@jacksonlewis.com

        Steven I. Farbman
        Jackson Lewis LLP
        One PPG Place
        28th Floor
        Pittsburgh, PA 15222
        (412) 232-0404
        Email: farbmans@jacksonlewis.com