IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WILLIAM ANTHONY HILL, | ) |
| | ) |
| Plaintiff | ) |
| | ) Civil Action No. 05-445J |
| vs. | ) |
| | ) Magistrate Judge Amy Reynolds Hay |
| GEORGE PATRICK, ED KECHISEN, MARY JO BARBER, Mr. JOHN SAWTELLE, TOM JANOKA, Ms./Dr. JEANANN McAL-LISTER, CHRIS GARMAN, Mr. WILSON, KRISTA BROWN, MEMBERS OF THE PENN-SYLVANIA PROBATION AND PAROLE, HENRY TATUM, JOHN THOMAS, RANDELL BRITTON, SHIRLEY KNAPP, Ms. DORETTA CHENCHAERICK, TIM RICE, FRANK HART-NETT, CYNTHIA POSMOGA, JOAN BAILEY, SHARON M. BURKS, Mr. MICHAEL L. GREEN, JEFFREY IMBODEN, MATTHEW T. MANGINO, BENJAMIN MARTINEZ, GERARD MASSARO, CATHERINE McVEY, MICHAEL WEBSTER, LLOYD A. WHITE, and JERRY L. EVERHART, | ) |
| | ) Re: Dkt. [101] |
| Defendants | ) |

## MEMORANDUM OPINION AND ORDER[1]

HAY, Magistrate Judge

William A. Hill ("Plaintiff") was a state prisoner who was convicted of, *inter alia*,

Indecent Assault 18 Pa.C.S.A. 3126, and Corruption of Minors, 18 Pa.C.S.A. 6301. While

incarcerated, he brought a civil rights suit pursuant to, *inter alia*, 42 U.S.C. § 1983, alleging that

---

[1] On July 26, 2007, in accordance with the provisions of 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73, the parties consented to have a United States magistrate judge conduct all proceedings in this case, including the entry of final judgment. Dkt. [93].

the defendants violated his federal constitutional rights. This case has been the subject of prior proceedings including a Report and Recommendation. Familiarity with those proceedings is presumed. As a consequence of those proceedings, only two of Plaintiff's claims remain: (1) a First Amendment retaliation claim against Defendants Ed Kechisen ("Kechisen"), Mary Jo Barber ("Barber") and John Sawtelle ("Sawtelle"), and (2) an Eighth Amendment claim of deliberate indifference against Defendants Chris Garman ("Garman") and Tim Rice ("Rice") based upon Plaintiff being attacked by another inmate.

Presently before the Court is the Defendants' motion for summary judgment. Dkt. [101]. For the reasons that follow, summary judgment is properly granted in favor of the Defendants and against Plaintiff.

*Standard of Review*

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Although Plaintiff had originally been charged with, *inter alia*, Statutory Rape, he entered a negotiated plea agreement wherein he ultimately plead guilty to only Indecent Assault without the consent of another, Corruption of Minors, Simple Assault, and Statutory Sexual Assault. The Statutory Rape charge was nolle prossed.). Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). The moving party bears the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact. Once that burden has been met, the

non-moving party must set forth "specific facts showing that there is a *genuine issue for trial*" or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. Matsushita Electric Industrial Corp. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), quoting Fed.R.Civ.P. 56(e). An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). Thus, it must be determined "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Brown v. Grabowski, 922 F.2d 1097, 1111 (3d Cir. 1990), quoting Anderson v. Liberty Lobby, Inc., 477 U.S. at 251-52. In analyzing the record, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor. McCarthy v. Recordex Serv.,Inc., 80 F.3d 842, 847 (3d Cir. 1996).

*Discussion*

Plaintiff's first claim is that Defendants Garman and Rice violated his Eighth Amendment right to be free of cruel and unusual punishment when these defendants failed to enforce a Department of Corrections ("DOC") policy that required inmates who were listening to their radios or televisions to do so with earphones. See Dkt. [66] at 17; Dkt. [56] at 2 to 3. Defendant Garman was Plaintiff's Unit Manager and Defendant Rice was Plaintiff's counselor. Dkt. [109] at 14, ¶ 30. Plaintiff contends that because these defendants failed to enforce the policy, Plaintiff's cellmate attacked him due to Plaintiff's complaints regarding the lack of enforcing the policy.

In fact, the evidence shows that Plaintiff was attacked by his cellmate on December 20, 2004. Dkt. [101-2] at Exhibit 4, page 7 of the transcript, line 6; Dkt. [98] at 8. In addition to attacking Plaintiff, Plaintiff's cellmate destroyed Plaintiff's television.

To "prevail on a failure to protect claim, an inmate must make two showings[,]" one, an objective showing, the second, a subjective showing. Pearson v. Vaughn, 102 F.Supp.2d 282, 290 (E.D. Pa. 2000). First, an inmate must show that "he is incarcerated under conditions posing a substantial risk of serious harm." Farmer v. Brennan, 511 U.S. 825, 834 (1994). Second, an inmate must show that the official "knows and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837. Moreover, the subjective showing or the "knowledge element of deliberate indifference is subjective, not objective knowledge, meaning that the official must actually be aware of the existence of the excessive risk; it is not sufficient that the official should have been aware." Beers-Capitol v. Whetzel, 256 F.3d 120, 133 (3d Cir. 2001). "To sustain his constitutional claim, [the inmate] must demonstrate something approaching a total unconcern for his welfare in the face of serious risks, or a conscious, culpable refusal to prevent harm[.]" King v. Fairman, 997 F.2d 259, 261 (7th Cir. 1993). As a corollary of the deliberate indifference standard, the Court in Farmer emphasized that negligence is insufficient to impose liability: "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." Farmer,

511 U.S. at 838.[2] See also Jackson v. Everett, 140 F.3d 1149, 1152 (8th Cir. 1998) ("[D]eliberate indifference must be viewed from [defendants'] perspective at the time in question, not with hindsight's perfect vision."). The plaintiff bears the burden of proof as to both the subjective and objective prongs for, as the Court of Appeals has explained, in order to "survive a summary judgment on an Eighth Amendment claim asserted under 42 U.S.C. § 1983, a plaintiff is required to produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." Hamilton v. Leavy, 117 F.3d 742, 746 (3d Cir. 1997).

In support of their motion for summary judgment, the Defendants pointed out that there is no evidence of the subjective prong. Dkt. [102] at 10 to 12.[3] Defendants point to evidence that

---

[2] In Heggenmiller v. Edna Mahan Correctional Institution for Women, 128 Fed.Appx. 240, 245 (3d Cir. 2005) the Third Circuit Court of Appeals succinctly summarized the requirements for a failure to protect claim, noting that in order "to establish an Eighth Amendment violation, Appellants must show that they faced a 'substantial risk of harm' to which the Administrative Defendants acted with 'deliberate indifference.' The predicate substantial risk of harm must be objectively serious. Deliberate indifference, in turn, requires a subjective showing that a prison official 'knows of and disregards' that risk: 'the official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'"(citations omitted).

[3] Defendants appear to concede the objective prong. Defendants stated that "[i]nasmuch as the severity of Plaintiff's injuries [from the assault of his cellmate] is arguably sufficient for prong-one purposes, the adequacy of Plaintiff's Eighth Amendment claim turns on the deliberate indifference of the above described failure to protect." Dkt. [102] at 10. This Court disagrees that the objective prong in a failure to protect analysis asks, were the injuries that were sustained serious enough after the attack. Rather, in our view, the proper inquiry is was the risk that a prisoner would be attacked objectively serious. See, e.g., Heggenmiller v. Edna Mahan Correctional Institution for Women, 128 Fed. Appx. 240, 245 ("[t]he predicate substantial risk of harm must be objectively serious") (emphasis added); Smith v. Cummings, 445 F.3d 1254, 1258 (10th Cir. 2006) ("To establish a cognizable Eighth Amendment claim for failure to protect [an inmate from harm by other inmates], the plaintiff must show that he is incarcerated under conditions posing a substantial risk of serious harm[,] the objective component, and that the prison official was deliberately indifferent to his safety, the subjective component.") (quoting Verdecia v. Adams, 327 F.3d 1171, 1175 (10th Cir. 2003)). Had the Defendants not conceded the point, the Court would be inclined to hold that Plaintiff failed to adduce any evidence of conditions that posed a substantial risk of serious harm to him. Mere failure to enforce a policy on the wearing of headphones, without more, which is all the evidence Plaintiff adduces against Defendants

although the Plaintiff informed Defendants Garman and Rice that their underlings were not enforcing the policy requiring the wearing of earphones, such was not sufficient to establish that they were aware of a risk to Plaintiff's safety; Plaintiff never stated to them that the cellmate and he were arguing about the headphone use, or that Plaintiff feared the cellmate. They also point out that Plaintiff does not allege that the inmate who eventually attacked him was so dangerous that Defendants Garman and Rice must have known of the threat that the cellmate posed to Plaintiff. In light of the foregoing, Defendants have carried their initial summary judgment burden so as to shift the burden to Plaintiff to come forth with evidence of the subjective prong.

In response to the Defendants' summary judgment motion, Plaintiff argued that the failure of Defendants Garman and Rice to enforce the policy on use of ear phones was the cause of his assault because he had "continuously informed the unit officer and defendants of the plaintiff's cellmate['s] failure to obey prison policy . . . . Nobody would listen until the assault occurred. . . ." Dkt. [107] at 14. However, Plaintiff points to no evidence that he informed Defendants Garman or Kechisen **prior** to the December 20, 2004 attack. Rather, all of the evidence to which Plaintiff points shows that Plaintiff complained to these two Defendants only **after** the attack. See, e.g., Dkt. [109] at 12, ¶ 25 (a) citing to Exhibit I (found at Dkt. [108-2] at 13, which is an Inmate's Request to Staff addressed to Rice/Garman and dated, April 12, 2006, which is more than one year and three months after the attack). Plaintiff does point to Exhibit F(2), which is found at Dkt. [108-2] at 10, which is a grievance dated February 17, 2005, some two months after the attack, wherein Plaintiff states that he told Garman that he had continuously informed prison guards of the policy regarding wearing of earphones and that they failed to

---

Garman and Rice, simply does not evince a condition posing a substantial risk of serious harm.

enforce it and in response, Mr. Garman is alleged to have said "I guess we're responsible for the attack and the destruction of the TV." From the context, it is clear that even here, Plaintiff's evidence is that he only spoke with Garman **after** the attack. Plaintiff next points to Exhibit H, which is found at Dkt. [108-2] at 12, which is an Inmate's Request to Staff directed at Mr. Garman, which is dated May 9, 2005 (nearly six months after Plaintiff was attacked), which complains of Plaintiff's then current cellmate who, like his previous cellmate, fails to use headphones. Hence, there is no evidence that Defendants Garman and Rice had any warning or prior knowledge that Plaintiff's cellmate posed a threat of an attack. Moreover, as the Defendants point out, even Plaintiff acknowledged that he had no idea that his cellmate would attack him. Dkt. [103] at 5, ¶ 29; Dkt. [109] at 13 to 14, ¶ 29. James v. Milwaukee County, 956 F.2d 696, 700 (7th Cir. 1992)("A prisoner normally proves actual knowledge of impending harm by showing that he alerted prison officials to an identifiable threat to his safety" or by showing "the existence of so substantial a risk of harm that 'the defendants' knowledge of risk can be inferred[.]' ") (citations omitted).

Hence, on this record there is no evidence that Defendants Garman and Rice had any knowledge of a risk that Plaintiff would be attacked by his cellmate. Hence, there is no evidence of the subjective prong of the Eighth Amendment.

In an attempt to circumvent this factual record, Plaintiff argues that because the policy required inmates to wear headphones and because the defendants failed to enforce this policy, they are nonetheless responsible. This begs the question of whether they knew prior to the attack

7

that this policy was not being enforced and Plaintiff adduces no evidence that prior to him being attacked they knew that the policy was not being enforced.[4]

However, even if Plaintiff were to adduce evidence that Defendants Garman and Rice possessed knowledge that the policy requiring the wearing of earphones was not being enforced even prior to his attack, such would not be sufficient to create a genuine issue of fact with respect to the subjective prong. Even if a prison official knew that the earphones policy was not being enforced, that would not have been sufficient to put them on notice that this placed inmates at risk of suffering an attack. No reasonable jury could find for Plaintiff based on this theory in light of the evidence adduced. In other words, mere knowledge that a policy on headphones was not being enforced would not constitute adequate evidence of deliberate indifference to Plaintiff's safety.

This is so notwithstanding Plaintiff's citation to the case of Goka v. City of Bobbit, 862 F.2d 646, 652 (7th Cir. 1988). In that case, the plaintiff alleged that the defendants therein had failed to enforce a tool control policy in place at the prison and they knew of this failure and that a prisoner who had previously harassed and assaulted the victim eventually attacked the victim with a broom. The plaintiff victim alleged a failure to protect based, in part, on the failure of the defendants to enforce the tool control policy and their knowledge that the policy was not being enforced. The Court of Appeals held that the Defendants were not entitled to summary judgment because the Defendants had knowledge that the failure to enforce the policy posed a

---

[4] Plaintiff does offer some evidence that several months **after** the attack on Plaintiff, Defendant Garman failed to enforce the policy. Dkt. [108-2] at 12. However, this failure to do so after the attack fails to establish the fact that Defendant Garman possessed the requisite subjective knowledge **prior** to the attack, as is required for Plaintiff to make out his prima facie case of a failure to protect claim under the Eighth Amendment.

risk of attack. The Court of Appeals noted that: "[t]he risk to inmate safety from misuse of maintenance and other tools as weapons is evident on the face of the tool control policy, which states that the primary purpose of the policy is 'to minimize the potential danger to facility security from the misuse of tools,' including their use as weapons. Facts such as a history of incidents involving the use of a broom as a weapon or prior requests for protection which had gone unheeded are also important in determining whether a prison official's failure to act constitutes a conscious disregard for an inmate's safety." Goka, 862 F.3d at 652. Plaintiff has adduced no similar evidence here. There is no evidence that the policy on ear phones had anything to do with maintaining security of the inmates or that failure to do so would obviously involve potential risk to inmate safety, unlike the policy in Goka, nor did Plaintiff adduce any evidence of prior assaults based on the failure to adhere to this policy, nor any evidence that Plaintiff requested that he be protected from his cellmate and that such a request was ignored. See Riley v. Jeffes, 777 F.2d 143, 147 (3d Cir. 1985)("To obtain relief, an inmate must show 'a pervasive risk of harm to inmates from other prisoners,' and that the prison officials have displayed 'deliberate indifference' to the danger. . . . 'A pervasive risk of harm may not ordinarily be shown by pointing to a single incident or isolated incidents . . . .'")(citations and footnote omitted). Accordingly, summary judgment is properly entered in favor of Defendants Garman and Rice on the failure to protect claim.

  Next we take up Plaintiff's retaliation claim. Plaintiff alleged that Defendants Kechisen, Barber and Sawtelle, retaliated against him by dismissing Plaintiff from the Sexual Offenders Treatment Program, knowing that this action would adversely affect his chances for parole. Plaintiff further alleged that he was retaliated against based upon his writing a letter or grievance

complaining that Defendant Kechisen did not, as he had promised, give to Plaintiff credit for time he spent in a sexual offenders treatment program previously. Plaintiff alleged that when he sent his letter in October 2004, he also showed the grievance to Defendants Kechisen, Barber and Sawtelle. Shortly after doing so, Plaintiff alleged that on October 19, 2004, these three defendants called him to a meeting, "interrogated" him and asked him if he still wanted to participate in the Sexual Offenders Treatment Program. Plaintiff stated that he did. However, two days later, on October 21, 2004, he was discharged from the program. Dkt. [101-2] at 4 to 5, transcript pp. 8 to 9.

Retaliation for the exercise of a constitutionally protected right is itself a violation of rights secured by the Constitution, which is actionable under section 1983. White v. Napoleon, 897 F.2d 103, 111 - 112 (3d Cir. 1990); Milhouse v. Carlson, 652 F.2d 371, 373-74 (3d Cir. 1981) (retaliation for exercising right to petition for redress of grievances states a cause of action for damages arising under the constitution). Accord Anderson v. Davila, 125 F.3d 148, 161 (3d Cir. 1997) ("[A]n otherwise legitimate and constitutional government act can become unconstitutional when an individual demonstrates that it was undertaken in retaliation for his exercise of First Amendment speech.") (citing, Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274 (1977)).

In order to prevail on a retaliation claim, a plaintiff must establish: (1) that he engaged in constitutionally protected activity; (2) that he was subject to adverse actions by a state actor; and (3) the constitutionally protected activity was a substantial motivating factor in the state actor's decision to take adverse action. Anderson v. Davila, 125 F.3d at 161 (citing Mt. Health City Sch. Dist. Bd. of Educ. v. Doyle). If the plaintiff proves these elements, the burden shifts to the state

actor to prove that it would have taken the same action even without the unconstitutional factors. Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. at 287. In the prison context, the state actor may rebut a plaintiff's claim by showing that their actions were motivated by legitimate penological objectives. Pratt v. Rowland, 65 F.3d 802 (9th Cir. 1995).

It is Plaintiff's burden to prove that the Defendants were motivated by retaliation against Plaintiff. See Hannon v. Speck, Civ. A. No. 87-3210, 1988 WL 131367, at *4 (E.D.Pa. Dec. 6, 1988) ("In bringing a §1983 action alleging such retaliation, an inmate faces a substantial burden in attempting to prove that the actual motivating factor ... was as he alleged.") (internal quotes and citation omitted), aff'd, 888 F.2d 1380 (3d Cir. 1989)(Table). Even if a plaintiff successfully alleges that retaliation was the substantial motivating factor, the plaintiff's claim can be defeated by "demonstrating that the same action would have been taken even in the absence of the protected conduct." Green v. Philadelphia Housing Authority, 105 F.3d 882, 885 (3d Cir. 1997).

Defendants pointed out that the record establishes they would have taken the same action, i.e., discharging Plaintiff from the program, even in the absence of Plaintiff's complaining about Defendant Kechisen's failure to credit Plaintiff with time spent in a sexual offenders treatment program outside of the prison. Defendants point to the fact that Plaintiff filed a grievance in response to his being discharged from the program. In the grievance response, the non defendant responder stated that he had interviewed both Defendants Kechisen and Barber and that they had indicated Plaintiff was discharged for non compliance with the program insofar as Plaintiff did not accept full responsibility for his crimes and also for being disruptive to the group. Dkt. [101-2] at Exhibit 3. Defendants also point to a response to Plaintiff's request to staff, wherein

11

Defendant Barber replied to Plaintiff's question of why he was discharged. Defendant Barber replied on November 5, 2004 that the "decision for discharging you from the SOPTC was made based upon the denial of your offense [and] non-amenability to treatment." Dkt. [101-2] at Exhibit 5. Defendants also point to Plaintiff's request to staff directed to Defendant Kechisen wherein Plaintiff asked the same question regarding reasons for Plaintiff's discharge from the program. Defendant Kechisen responded that "[y]ou were removed due to your denial of responsibility [and] not being considered amenable to taking the program." Dkt. [101-2] at Exhibit 5.

In a grievance appeal, Plaintiff contested the reason given for his discharge, i.e., that he failed to accept full responsibility; Plaintiff asserted that "there is no proof written or verbal dening [sic] responsibility." Dkt. [101-2] at Exhibit 6. Plaintiff appears to assert that such a reason was fabricated.

However, as the Defendants point out, in Plaintiff's own deposition, he confirms that he denied full responsibility for the crime of which he was convicted. In the course of the deposition, Defendants' attorney asked Plaintiff why he believed the Defendants retaliated against him. In answering the question, Plaintiff explained that he did in fact deny some aspects of the facts alleged to have surrounded his criminal offense and that this was a source of concern to the Defendants. The deposition reveals the following exchange:

> [Answer by Plaintiff.] Also, Defendant Mary Jo Barber was saying that I had had sex with the individual, the victim, and my claim was that "I didn't have sex with the individual. You don't know exactly what the disposition and everything said." When I was here in Pittsburgh, it was indecent assault, you know, and statutory sexual assault having intercourse. When my lawyer said that I can get out the next day and stuff, I took the statutory sexual assault not knowing it was having intercourse or whatnot. They was just going by that paper saying, "Well, you had

12

to have sex with her and stuff. That's what it says here in the paper." I said, "I am telling the truth. You don't believe the circumstances behind the case."

    Q. Would it be fair to characterize what went on in the meetings against your religious belief was that they were requiring you to admit the official version of the events?

    A. Yes. They wanted me to admit something had taken place that did not take place, which was having sexual intercourse with the victim.

Dkt. [101-2] at Exhibit 1, transcript pp. 11 to 13.[5]

In the face of his deposition testimony, it is difficult to understand Plaintiff's argument that he was not discharged from the treatment program based upon his lack of cooperation with the program, which cooperation includes admission of guilt. See Dkt. [109] at 10 to 11 (disputing that he was not uncooperative with the treatment program). While Plaintiff may not deny in toto his criminal activities, see, Dkt. [109] at 11 to 12, it was the opinion of at least Kechisen and Barber that Plaintiff was denying some important aspect of his criminal sexual activity and for this reason merited expulsion from the program.

It is generally acknowledged that an integral part of making progress in rehabilitation is acceptance of responsibility for one's crimes and that rehabilitation is a legitimate penological interest. See, e.g., McKune v. Lile, 536 U.S. 24, 36 (2002)(plurality opinion)("The Court has instructed that rehabilitation is a legitimate penological interest . . . . Since 'most offenders will eventually return to society, [a] paramount objective of the corrections system is the rehabilitation of those committed to its custody.' Acceptance of responsibility in turn

---

    [5] Although Plaintiff had originally been charged with, *inter alia*, Statutory Rape, he entered a negotiated plea agreement wherein he ultimately plead guilty to only Indecent Assault without the consent of another, Corruption of Minors, Simple Assault, and Statutory Sexual Assault. The Statutory Rape charge was nolle prossed. The Court takes judicial notice of these facts as revealed by the docket sheets of the Court of Common Pleas in Plaintiff's criminal case which are available at:
    http://ujsportal.pacourts.us/PublicReporting/PublicReporting.aspx?rt=1&&ct=4&dkt=90010189&arch=0&ST=3/13/2008%209:18:21%20AM

demonstrates that an offender 'is ready and willing to admit his crime and to enter the correctional system in a frame of mind that affords hope for success in rehabilitation over a shorter period of time than might otherwise be necessary.'")(citations omitted).[6] Indeed, as declared in McKune, "[a]cceptance of responsibility is the beginning of rehabilitation." Id. at 47 . See also Johnson v. Baker, 108 F.3d 10, 12 (2nd Cir.1997)("[a]n inmate who is unwilling to admit to particular criminal activity is unlikely to benefit from a rehabilitative process aimed at helping those guilty of that activity."); Hawkins v. Morse, 194 F.3d 1312 (Table), 1999 WL 1023780, at *2 (6th Cir. Nov. 4, 1999)("the parole board's consideration of a prisoner's willingness to accept responsibility for committing a crime . . . . is reasonably related to a legitimate penological interest, rehabilitation[.]. . ."). Hence, contrary to Plaintiff's argument that the "defendants gave no valid penological reason to arbitrarily discharge plaintiff from the S.O.P.," Dkt. [107] at 7, the reason given, i.e., that he denied some aspect of his criminal activity, which could reasonably be seen to impede amenability to treatment/rehabilitation, is indisputably a legitimate penological reason.[7]

Based on this record, it is clear that there is no material factual dispute that the Defendants would have taken the same action of discharging Plaintiff from the sexual offenders

---

[6] As the opinion in McKune, 536 U.S. at 33 observed: "[a]n important component of those rehabilitation programs requires participants to confront their past and accept responsibility for their misconduct. Id., at 73. 'Denial is generally regarded as a main impediment to successful therapy[.]'"

[7] Plaintiff appears to argue in connection with his discharge from the program that he was not given adequate notice nor afforded adequate procedural protections prior to his discharge. Dkt.[107] at 7 to 11. To the extent that he is trying to raise a procedural due process claim at this stage of the proceedings, he may not do so. After the prior proceedings, there are only two remaining claims, the retaliation claim and the failure to protect claim.

treatment program even absent any protected activity on Plaintiff's part. Hence, summary judgment should be entered in favor of the Defendants on Plaintiff's failure to protect claim.

Hence, the following order is entered:


AND NOW this 10th day of April, 2008, the Defendants' Motion for Summary Judgment, Dkt. [101], is hereby **GRANTED**. The Clerk should mark the case closed.

/s/ *Amy Reynolds Hay*
United States Magistrate Judge

cc: William A. Hill
      1021 Taylor Way #3
      Pittsburgh, PA 15221

      All counsel of record by Notice of Electronic Filing